754

The TRAVELERS INDEMNITY COMPANY, Plaintiff-Appellant,

v.

George K. SARKISIAN, John Sarkisian, Norman Preskitt, Ivy Mechanical & Electrical Associates, Inc., Sarkisian Brothers, Inc., Sarco Industries, Inc., Sarbro Equipment Corp., and John Doe and Richard Roe, said names being fictitious but meant to designate the officers, employees and/or agents of the aforesaid defendants, presently unknown to the Plaintiff, who participated in the acts set forth herein, Defendants-Appellees.

The TRAVELERS INDEMNITY COMPANY, as Assignee of Judgments Against Midstate Constructors, Inc., to Enforce Certain Judgments, Petitioner-Appellant,

v.

George SARKISIAN, John Sarkisian, Norman Preskitt, Sarco Industries, Inc., Charlotte Street Builders, Inc., and Sarkisian Brothers, Inc., Respondents-Appellees.

Nos. 777, 796 and 818, Docket 85–7935, 85–7937 and 85–7939.

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1986.

Decided June 19, 1986.

Leslie Couch, Albany, N.Y. (Sharon Counch DeBonis, Couch and Howard, Albany, N.Y., on brief), for plaintiff-petitioner-appellant.

Alan J. Pope, Binghamton, N.Y. (Thomas M. Christina, Ball & McDonough, Binghamton, N.Y., on brief), for defendants-respondents-appellees.

Before NEWMAN, KEARSE and MINER, Circuit Judges.

## JON O. NEWMAN, Circuit Judge:

These related but unconsolidated appeals primarily concern the esoteric doctrine of "artful pleading." Specifically, we consider whether the circumstances permit a state court defendant to remove a case to federal court on the theory that a complaint purporting to rely solely on state law in reality contains federal claims artfully pled. In No. 85–7935, Travelers Indemnity Company ("Travelers") appeals from an order of the District Court for the Northern District of New York (Howard G. Munson, Chief Judge) denying its Rule 60(b)(6) motion for relief from a 1984 judgment that dismissed a civil RICO suit.[1] In No. 85–7937, Travelers appeals from a 1985 judgment of the Northern District that dismissed on *res judicata* grounds a suit, removed from state court, that contains claims related to the claim in the dismissed RICO suit.[2] For reasons that follow, the order in No. 85–7935 is affirmed, and the judgment in No. 85–7937 is reversed and remanded with instructions to remand the case to state court.

## I. Background

Travelers was the surety on certain payment and performance bonds issued on behalf of Midstate Constructors, Inc. ("Midstate"), a Texas corporation that performed construction work in the Southwest. Midstate defaulted on obligations to owners and contractors. The Texas state courts rendered three judgments against Midstate totalling $3,236,588.20. Travelers satisfied these judgments as surety, and the prevailing plaintiffs assigned their claims against Midstate to Travelers. Because Midstate was the subject of a Chapter VII bankruptcy proceeding, Travelers sought others it could hold liable for Midstate's debts.

On August 4, 1981, certain parties who had agreed to indemnify Travelers against liabilities arising from the Midstate payment and performance bonds commenced an action in the New York courts to have the indemnity agreement declared void. On August 18, 1981, Travelers responded by commencing a diversity action in the Northern District of New York for breach of the indemnity agreement. Travelers subsequently removed the state declaratory judgment action to the Northern District of New York, and the actions were consolidated (the "consolidated actions").

On August 15, 1983, Travelers filed a complaint in the Northern District, seeking relief under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1982), against some but not all of the defendants it had sued in the consolidated actions. Travelers sought damages resulting from bankruptcy fraud and mail fraud. The first, third, fourth, and fifth causes of action alleged that defendants had fraudulently diverted assets from two insolvent corporations, Midstate

---

1. Defendants-appellees in No. 85–7935 are George K. Sarkisian, John Sarkisian, Norman Preskitt, Ivy Mechanical & Electrical Associates, Inc., Sarkisian Brothers, Inc., Sarco Industries, Inc., Sarbro Equipment Corp., and John Doe and Richard Roe (fictitious names designating officers, employees, and agents of the above defendants unknown to plaintiff).

2. Defendants-appellees in No. 85–7937 are George Sarkisian, John Sarkisian, Norman Preskitt, Sarco Industries, Inc., Charlotte Street Builders, Inc., and Sarkisian Brothers, Inc.

and Ivy Mechanical & Electrical Associates, Inc. ("Ivy"), for whom Travelers was surety. The second cause of action alleged mail fraud based on false representations made by Midstate to obtain payments from owners. The sixth cause of action alleged fraud in connection with the filing of Ivy's bankruptcy petition. The District Court dismissed the RICO complaint on the authority of *Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482 (2d Cir.1984), and this Court affirmed by order on April 12, 1985. Travelers did not petition for certiorari. After the Supreme Court reversed *Sedima,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), Travelers moved in the District Court, pursuant to Fed.R.Civ.P. 60(b)(6), for relief from the judgment. The District Court denied the motion. No. 85–7935 is Travelers' appeal from this denial.

In August 1983, Travelers filed a complaint ("petition" in New York practice) in a special proceeding in New York Supreme Court against some but not all of the defendants in the civil RICO action. Travelers sought to hold defendants liable for Midstate's debts to it on state law theories of fraudulent conveyance, piercing the corporate veil, unlawful payment of dividends, and unlawful salary payments. Travelers also sought attorney's fees. Defendants removed this action to federal court on federal question grounds on the theory that the state law claims were in substance a RICO claim, artfully pled. Travelers moved for a remand to state

court, and defendants moved for summary judgment on the ground that the dismissal of the prior RICO action was *res judicata.* The District Court denied Travelers' motion to remand and granted defendants' summary judgment motion. In No. 85–7937 Travelers seeks review of both rulings of the District Court.[3]

## II. Rule 60(b)(6)

A district court may grant relief from an otherwise final judgment for any of five enumerated reasons or for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Travelers argues that it is entitled to relief from the RICO judgment based on the Supreme Court's reversal of *Sedima.* However, it is well settled that a change in decisional law is not grounds for relief under Rule 60(b)(6). *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Loucke v. United States,* 21 F.R.D. 305 (S.D.N.Y.1957).[4] *Ackermann* affirmed the denial of Rule 60(b)(6) relief to a party who failed to appeal an adverse judgment and then relied on the reversal of a similar judgment in a related case. Since *Ackermann* squarely governs the instant controversy, the order in No. 85–7935 is affirmed.

## III. Removal

### A. Artful Pleading

In No. 85–7937, Travelers argues that its state court suit relies solely on

**3.** Travelers needlessly filed two notices of appeal, attempting to appeal issue by issue. In No. 85–7937, it challenges the District Court's remand ruling. In No. 85–7939, it challenges the District Court's *res judicata* ruling. Since only one appeal will lie from the final judgment, the appeal in No. 85–7939 is dismissed, and Travelers' challenge to the *res judicata* ruling is incorporated into the appeal in No. 85–7937.

**4.** Travelers might have based its motion for relief on the third clause of Rule 60(b)(5) on the ground that "it is no longer equitable that the judgment should have prospective application." A change in decisional law is cognizable under Rule 60(b)(5). *United States v. Georgia Power Co.,* 634 F.2d 929 (5th Cir.1981), *vacated on other grounds,* 456 U.S. 952, 102 S.Ct. 2026, 72 L.Ed.2d 477 (1982); *Jordan v. Erie School Dis-*

*trict,* 548 F.2d 117 (3d Cir.1977); *Theriault v. Smith,* 523 F.2d 601 (1st Cir.1975). However, it is doubtful that the preclusive nature of a dismissal with prejudice is a prospective effect under the rule. *See Gibbs v. Maxwell House,* 738 F.2d 1153 (11th Cir.1984). *But see Kirksey v. City of Jackson,* 714 F.2d 42 (5th Cir.1983). In any event, if Travelers had filed a timely petition for certiorari, the petition surely would have been granted and the case summarily remanded to this Court for reconsideration in light of *Sedima. See Hoffman v. Eti-Quette Assaf Ltd.,* —— U.S. ——, 106 S.Ct. 517, 88 L.Ed.2d 451 (1985); *Joel v. Cirrito,* —— U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 672 (1985). Since Travelers had ample opportunity to protect itself on direct review, it is not inequitable for the judgment to continue to have prospective application.

state law for relief and therefore does not "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (1982), and is not removable under 28 U.S.C. § 1441(a) (1982).[5] Normally, removal based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). It has been the law for decades that "the party who brings a suit is master to decide what law he will rely upon...." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). "[W]here plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground" to defeat removal. 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.160, at 185 (2d ed. 1979); *see Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 964 (2d Cir.1981).

■ However, in certain limited circumstances a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of "artful pleading." In the words of a leading treatise,

> [O]ccasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization. For instance, in many contexts plaintiff's claim may be one that is exclusively governed by federal law, so that the plaintiff necessarily is stating a federal cause of action, whether he chooses to articulate it that way or not. If the only remedy available to plaintiff is federal, because

of preemption or otherwise, and the state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading.

14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3722, at 268–75 (2d ed. 1985) (citations omitted). The classic application of the artful pleading doctrine occurs in the context of federal preemption of state law. In that circumstance a plaintiff purporting to plead a claim based on state law is necessarily relying on federal law for relief. *See Avco Corp. v. Aero Lodge*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (claim for breach of collective bargaining agreement cognizable only under federal Labor-Management Relations Act); *American Synthetic Rubber Corp. v. Louisville & Nashville Railroad Co.*, 422 F.2d 462 (6th Cir.1970) (claim for negligent delivery of goods cognizable only under Carmack Amendment to Interstate Commerce Act). In its pristine form, the artful pleading doctrine is not a departure from the rule that the plaintiff is master of his complaint. If a plaintiff has pled what must necessarily be a federal claim, he has no state law available to choose as the basis for his suit. A similar but procedurally distinguishable instance of artful pleading occurs when a defendant argues not only that federal law preempts the state law on which a plaintiff relies but also that federal law provides no relief on the facts the plaintiff has alleged. In such circumstances, federal law is interposed solely as a defense, and removal jurisdiction will not lie. The plaintiff has *no* available bodies of law from which to choose. *Franchise Tax Board v. Construction Laborers Vacation Trust, supra; Long Island Railroad Co. v. United Transportation Union*, 484 F.Supp. 1290 (S.D.N.Y.1980).[6]

---

**5.** Although there is complete diversity among the parties, defendants are citizens of New York, the forum state, and therefore cannot remove the case on diversity grounds. 28 U.S.C. § 1441(b) (1982).

**6.** It is not immediately apparent why federal preemption, where arguable, is not always simply a defense to a complaint containing only state law claims, rather than a basis of removal on federal question grounds. *See* 1A J. Moore & B. Ringle, *Moore's Federal Practice and Procedure* ¶ 0.160[4] (2d ed. 1985). If plaintiff's state

The vitality of the master-of-the-complaint rule and the limited scope of the doctrine of artful pleading were both rendered uncertain by the Supreme Court's decision in *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In *Federated Stores,* seven plaintiffs brought parallel actions under section 4 of the Clayton Act, 15 U.S.C. § 15 (1982), alleging retail price-fixing in the women's clothing industry. The District Court dismissed all seven actions on the ground that the plaintiffs had not alleged an "injury" to their "business or property" within the meaning of that section. Five of the seven plaintiffs appealed to the Ninth Circuit. Plaintiff Brown chose not to appeal and instead relied on the same facts to assert in the California state court state law claims of civil conspiracy, unfair competition, fraud, and restitution. Brown's case was removed to federal court, and the District Court, applying the artful pleading doctrine, denied Brown's motion to remand. The District Court considered Brown's state law claims "federal in nature." *See Federated Stores, supra,* 452 U.S. at 397 n. 2, 101 S.Ct. at 2427 n. 2. On the merits, the District Court held that the removed complaint was barred by *res judicata* as a result of the dismissal with prejudice of the prior Clayton Act lawsuit.

Brown appealed the dismissal of the removed complaint to the Ninth Circuit. While this appeal was pending, the Supreme Court held, in *Reiter v. Sonotone Corp.,* 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), that retail purchasers may sue under section 4 of the Clayton Act for injury to their business or property. In light of *Reiter,* the Ninth Circuit reversed and remanded the five Clayton Act cases that had been appealed. In deciding Brown's appeal, the Ninth Circuit held that Brown's second lawsuit was properly removed but that, despite his failure to appeal dismissal of his Clayton Act suit, *res judicata* should not be applied in light of the reversals in the five companion cases in which appeals were successfully taken. The Supreme Court reversed the *res judicata* holding and devoted most of its opinion to that issue. The Court approved the removal in footnote 2, noting without elaboration that "at least some of the claims had a sufficient federal character to support removal" under the artful pleading doctrine. *Federated Department Stores, Inc. v. Moitie, supra,* 452 U.S. at 397 n. 2, 101 S.Ct. at 2427 n. 2.

Unquestionably, *Federated Stores* made some alteration of the master-of-the-complaint rule. Even though Brown had pled in state court claims grounded on state law that were not preempted by federal law, *cf. Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), the Supreme Court considered at least some of his claims to be federal claims, artfully pled. How far beyond the preemption context the Court intended to extend the artful pleading doctrine depends

law claims are preempted, it would seem that a motion to dismiss would be granted. If the dismissal is without prejudice to amend, plaintiff may then assert the federal claims upon which he is entitled to relief, and defendant can then remove the case to federal court. Perhaps removal based on preemption is justified because the state court will usually have concurrent jurisdiction over the latent federal claims. For example, a state court would have concurrent jurisdiction over the Labor-Management Relations Act claim that supported removal in *Avco Corp. v. Aero Lodge, supra. See Amalgamated Association of Street, Electric, Railway, and Motor Coach Employees v. Lockridge,* 403 U.S. 274, 298, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971). If the facts alleged in the complaint necessarily entitle the plaintiff to relief under either federal or state law and the state court

has concurrent jurisdiction over the federal claim, the state court might feel no obligation to decide the preemption question. Or the state court might defer resolving the preemption question until it is satisfied that plaintiff has proved his claim. If the state claim is preempted, the state court can then deem the pleadings amended to assert a federal claim and render judgment for plaintiff. If the state court defers deciding the preemption question in this fashion, assertion of any federal claim will come too late to allow removal. However, the artful pleading doctrine has been extended to claims which, once deemed federal, are within the exclusive jurisdiction of federal courts. *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (antitrust claim); *In re Snap-On Tools Corp.,* 720 F.2d 654 (Fed.Cir.1983) (patent claim).

upon its rationale for deeming Brown's state law claims to be in reality federal claims. Unfortunately, the footnote approving the removal provides little illumination. Two questions need to be answered: (1) which of Brown's state law claims were sufficiently federal to permit removal, and (2) what was the reason for considering them to be federal?

The first question was pointedly asked in Justice Brennan's dissenting opinion, 452 U.S. at 409, 101 S.Ct. at 2433, and evoked no explicit response in the majority opinion. The question was pertinent in determining the scope of the holding, since the Court ruled that the "federal" claims, whichever they were, were barred by *res judicata*. It seems clear that the Court did not consider all of Brown's state law claims to be federalized since it left to the Ninth Circuit on remand the task of deciding whether or not *res judicata* also barred the unfederalized state law claims.

The strongest indication of which claims the majority thought were federal is found in the last two paragraphs of the Court's opinion. The majority there identified Brown's contention that the dismissal of his prior federal court suit cannot preclude the "additional state-law claims" not decided in that suit "such as unfair competition, fraud, and restitution." 452 U.S. at 402, 101 S.Ct. at 2430. The Court declined to rule on this contention, leaving it for consideration by the Ninth Circuit on remand. A reasonable inference is that the claims of unfair competition, fraud, and restitution, even if ultimately determined by the Ninth Circuit to be barred by *res judicata*, were not the "federal" claims that justified re-

moval. That leaves only Brown's claim of civil conspiracy, which must necessarily have been the "federal" claim that justified removal.[7]

Since the civil conspiracy claim was the artfully pled claim, we can identify two criteria that will help us to understand why that claim was considered to be federal. First, the elements of the claim were virtually identical to those of a claim expressly grounded on federal law. The civil price-fixing conspiracy Brown alleged was a conspiracy to violate California's antitrust laws, Cal.Bus. & Prof.Code §§ 16720, 16726 (West 1964), which parallel federal laws in pertinent respects. *Oakland-Alameda County Builders' Exchange v. F.P. Lathrop Construction Co.*, 4 Cal.3d 354, 482 P.2d 226, 93 Cal.Rptr. 602 (1971) (in banc); *Rosack v. Volvo of America Corp.*, 131 Cal.App.3d 741, 182 Cal.Rptr. 800 (1982). However, if substantial identity between the elements of a state and a federal claim sufficed to deny a pleader the right to pitch his claim on state law and remain in state court, then *Federated Stores* would overrule *The Fair v. Kohler Die & Specialty Co.*, *supra*, and its progeny, a result unlikely to have been intended by the brief discussion of removal in footnote 2. A far more narrow reading of *Federated Stores* results if we identify as the second criterion that rendered Brown's claim "federal" the fact that he had previously elected to proceed in federal court. Brown had an initial opportunity to be master of his price-fixing claim and elected to assert it under the Clayton Act in federal court. Having done so and having forgone the opportuni-

7. We note that on remand in *Federated Stores*, the Ninth Circuit read the Supreme Court's opinion to leave to the Court of Appeals the task of determining which claims were sufficiently federal to have justified removal and hence to be barred by *res judicata* under the Supreme Court's holding. *Brown v. Federated Department Stores, Inc.*, 653 F.2d 1266 (9th Cir.1981). The Ninth Circuit concluded that all four claims were federal claims, artfully pled. For the reasons stated above, we think the Supreme Court necessarily identified only Brown's civil conspiracy claim as the "federal" claim that justified removal. Moreover, we think it unlikely

that the Court would have upheld removal jurisdiction without having in mind a specific claim that justified removal. We also note that the Ninth Circuit apparently recognized the possibility that only the civil conspiracy claim was the federal claim artfully pled, since it ruled, alternatively, that any of Brown's claims that remained as state law claims were in any event barred by *res judicata*, notwithstanding that these claims, if pleaded as pendent claims in the original federal lawsuit, might have been dismissed without adjudication upon the dismissal of the federal claim. *Id.* at 1267.

ty to plead a pendent state law claim, he was not free to abuse the dual court system by filing in state court a second lawsuit and resubmitting his claim as one based solely on state law. This interpretation of *Federated Stores* limits but does not abolish the master-of-the-complaint rule and has found favor elsewhere. *See Salveson v. Western States Bankcard Association*, 525 F.Supp. 566 (N.D.Cal.1981), *aff'd on this ground*, 731 F.2d 1423 (9th Cir. 1984).[8]

■ Applying the foregoing criteria in reverse order, we have no doubt that Travelers' state court complaint satisfies the second criterion since the complaint was filed after Travelers had previously elected to bring a similar claim in federal court under RICO. However, we conclude that the state court complaint does not satisfy the first criterion since the elements of the state law claims are not virtually identical to those previously pled under RICO.[9] Even though both the federal and state suits sought to hold certain defendants liable for Midstate's debts as a consequence of illegal diversion of Midstate's assets, the elements of Travelers' state law claims do not include "a pattern of racketeering activity" or operation of an "enterprise," which are elements of the RICO claim, 18 U.S.C. § 1962. A federal jurisdictional element, such as effect on interstate commerce, would not serve to distinguish state and federal claims for purposes of removal under *Federated Stores*, but the RICO elements not required for claims that suffice under New York law have significant substantive content. Though the state and federal claims arose out of the same nucleus of operative facts, that circumstance does not satisfy the test of *Federated Stores*, since it was true of all the claims in that litigation, and three of them were deemed to be properly pled state law claims.[10] The doctrine of artful pleading may therefore not be invoked to deem Travelers' state law claims to be "federal" claims and thereby justify removal.

## B. Other Grounds for Removal

Appellees seek to defend the judgment in No. 85–7937 on the alternative ground that Travelers' state court complaint is removable because there are federal ingredients to Travelers' state law claims. To prevail on its state law claims, Travelers must estab-

**8.** *Salveson* also suggested, as an additional rationale for removal in *Federated Stores*, that "the effect of permitting Brown to prosecute the same claims under state law in the second action would have been to impair the ability of defendants to assert the federal *res judicata* defense against those claims." *Salveson v. Western States Bankcard Association*, *supra*, 525 F.Supp. at 575. However, if Brown's case had been remanded to state court, the *res judicata* effect of the prior federal question suit would still have been governed by federal law. *See Limbach v. Hoover & Allison Co.*, 466 U.S. 353, 361–62, 104 S.Ct. 1837, 1842–43, 80 L.Ed.2d 356 (1984); *Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); *Deposit Bank v. Frankfort*, 191 U.S. 499, 59 S.Ct. 134, 83 L.Ed. 104 (1903); 8 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4468 (1981); *see also Restatement (Second) of Judgments* § 87 (1980) (federal law governs *res judicata* effect of all federal judgments, including those in diversity cases).

**9.** The Supreme Court has suggested that the artful pleading inquiry is factual in nature, *see Federated Department Stores, Inc. v. Moitie*, *supra*, 452 U.S. at 397 n. 2, 101 S.Ct. at 2427 n. 2, and one Circuit has applied the clearly errone-

ous standard to review of such an inquiry, *see Salveson v. Western States Bankcard Association*, 731 F.2d 1423, 1429 (9th Cir.1984). Although it would seem that characterization of a plaintiff's claims presents a purely legal question, *see Federated Department Stores, Inc. v. Moitie*, *supra*, 452 U.S. at 409 & n. 5, 101 S.Ct. at 2433 & n. 5 (Brennan, J., dissenting), we reverse the District Court because, even if the clearly erroneous standard applies, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

**10.** We recognize that our holding has the effect of defining a "claim" more narrowly for artful pleading purposes than for preclusion purposes. However, to hold that a plaintiff's state law claim will be recharaterized as a federal claim whenever it arises out of the same transaction as a prior federal claim would lead to the anomalous result that a case is removable under *Federated Stores* only if the defendant has a successful *res judicata* defense under federal law. This approach would seem to violate the well-established rule that removal jurisdiction may not rest on a federal defense.

lish that Midstate is liable to it and that defendants, by unlawfully diverting Midstate's assets, are responsible for Midstate's debts. Appellees argue that Travelers' state claims contain three federal ingredients: (1) New York law grants Travelers an action on the Texas judgments against Midstate only to the extent that the Texas judgments are entitled to full faith and credit under the Constitution, (2) federal law dictates the law New York must apply in determining defendants' liability for Midstate's debts, and (3) the Due Process Clause of the Fourteenth Amendment limits Travelers' ability to enforce the Texas judgments.

Normally, a case "arises under" federal law, 28 U.S.C. § 1331 (1982), if federal law creates plaintiff's cause of action. *See American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). The Supreme Court has also allowed federal jurisdiction for state-created claims that involve construction of federal law, *see Smith v. Kansas Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Hopkins v. Walker*, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917), but only if the federal element is substantial. *See Gully v. First National Bank, supra; Shulthis v. McDougal*, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). The Court has excluded state-created claims with only a minor, technical federal element. For example, an action to establish title to land does not arise under federal law merely because, as part of his case, plaintiff must trace his title back to an undisputed federal grant. *See Shulthis v. McDougal, supra; Joy v. City of St. Louis*, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776 (1906). To hold otherwise would federalize "every action to establish title to real estate (at least in the newer states) ..., as all titles in those states come from the United States or by virtue of its laws." *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 507, 20 S.Ct. 726, 726, 44 L.Ed. 864 (1900). Because it would be equally anomalous to federalize every action seeking to enforce an out-of-state judgment, Travelers' state court complaint is not removable

simply because the plaintiff expects compliance with the Full Faith and Credit Clause. New York law explicitly provides that foreign judgments are enforceable only to the extent required by the Full Faith and Credit Clause, N.Y.Civ.Prac.Law & R. §§ 5401, 5402 (McKinney 1972). To whatever extent New York has thereby made observance of the Full Faith and Credit Clause an element of plaintiff's cause of action, this "federal" element is too insubstantial to support federal question jurisdiction.

We also reject appellees' argument that the bearing of federal law on the choice of law issue allows removal. Appellees are incorrect when they assert that federal law determines the law New York must apply in determining their liability for Midstate's debts. New York is free to apply its own choice of law rule, subject only to the full faith and credit and due process limitations that it may not apply the law of a jurisdiction lacking a significant relation to the litigation. *See Phillips Petroleum Co. v. Shutts*, — U.S. —, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) (plurality opinion); *Clay v. Sun Insurance Office, Ltd.*, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964); *Watson v. Employers Liability Assurance Corp.*, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954); *Home Insurance Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930). The constitutional limitations form no part of Travelers' affirmative claims, and the case does not arise under federal law merely because federal law defines the "operative limits" of a state rule. *Gully v. First National Bank, supra*, 299 U.S. at 118, 57 S.Ct. at 100.

Finally, appellees argue that Travelers may not enforce the Texas judgments unless such enforcement is consistent with due process. However, the due process issue forms no part of Travelers' affirmative claims and is properly raised as a defense to Travelers' complaint. A federal issue raised by way of defense will not support removal jurisdiction. *See, e.g.,*

*Franchise Tax Board v. Construction Laborers Vacation Trust, supra.*

#### IV. *Res Judicata*

In light of our holding that the District court lacked jurisdiction over the subject matter of the complaint in No. 85–7937, we express no opinion on the *res judicata* issue.[11]

#### V. Conclusion

The order in No. 85–7935 is affirmed. The judgment in No. 85–7937 is reversed, and the case is remanded to the District Court with instructions to remand the case to state court.

---

**11.** After remand, the state court, in resolving the *res judicata* issue, will need to decide the legal significance, if any, of the lack of identity among the defendants in the RICO and the state court actions.