■ RICHARD J. WERNER et al., Doing Business as BIRCHWOOD REALTY, Respondents, v KATAL COUNTRY CLUB, Formerly Known as EVERGREEN COUNTRY CLUB and/or WINDING BROOK COUNTRY CLUB, et al., Appellants, et al., Defendant. [650 NYS2d 866] —White, J. Appeal from an order of the Supreme Court (Harris, J.), entered January 10, 1996 in Rensselaer County, which partially denied certain defendants' motions for summary judgment dismissing the complaint against them.

In the fall of 1986, defendant Paul J. Roth, the principal

shareholder of defendant Katal Country Club (hereinafter collectively referred to as Roth), advised plaintiff Richard J. Werner, a licensed real estate broker and partner in plaintiff Birchwood Realty (hereinafter collectively referred to as plaintiff), that he was interested in selling two golf courses, the Evergreen Country Club (hereinafter Evergreen), and the Pheasant Hollow Golf Course (hereinafter Pheasant Hollow), both located in Rensselaer County. Through his efforts, plaintiff procured defendant Joseph D. Bove, Jr., who submitted a purchase offer of $4,500,000 for Evergreen to Roth on December 12, 1986. Roth rejected the offer; however, plaintiff procured two other proposed purchasers who on April 21, 1987 offered Roth $3,750,000 in cash for Evergreen. Roth accepted their offer and, in addition, granted them an irrevocable 18-month option to purchase Pheasant Hollow for $1,000,000. On the same day, Roth and plaintiff executed a commission agreement establishing a $375,000 commission to plaintiff on the sale of Evergreen and a 10% commission on the sale of Pheasant Hollow. Plaintiff did not collect these commissions because the foregoing contract was never completed and the parties thereto had no further contact after May 26, 1987.

Subsequently, Roth contacted Bove and resumed negotiations with him without plaintiff's participation. These negotiations led to an agreement by Bove to purchase Evergreen for $3,300,000. This agreement was memorialized in a proposed purchase contract drawn on July 1, 1987 by Roth's attorney, defendant Bernhardt Karp. Notably, this contract included a paragraph acknowledging that plaintiff was the broker and that Roth would pay his commission. About this time, Roth advised plaintiff that he would have to accept a reduced commission which he refused to do. Karp thereafter drafted a new commission agreement, which he dated July 1, 1987, naming Roth[1] as the broker and fixing his commission in the sum of $175,000. Karp also drafted a new proposed purchase contract designating Roth as the broker, which Bove signed on July 28, 1987. On the same day, Roth granted Bove a five-year option to purchase Pheasant Hollow for $950,000. Thereafter, Bove induced Fred Kassner to become involved in the purchase and in September 1987, assigned his contractual rights to him. After a series of transactions between Kassner, his corporation and Roth, Kassner purchased Evergreen on March 15, 1988.

When plaintiff learned of this transaction, he commenced an action for his brokerage commission that was ultimately settled during trial in February 1993 for $330,000. While this litiga-

---

1. Roth is a licensed real estate broker.

tion was pending, Kassner, on April 5, 1991, exercised his option to purchase Pheasant Hollow. This induced plaintiff to commence this action wherein he asserts four causes of action: one asserted against Roth based upon contract, a contractual interference claim against Roth and Bove, a demand for punitive damages, and lastly a claim against Karp sounding in fraud, contractual inference and seeking treble damages under Judiciary Law § 487 (1).

Prior to trial, Roth and Karp moved for summary judgment dismissing the complaint. Supreme Court, pursuant to CPLR 3025 (c), *sua sponte* amended the complaint to include the allegation of an oral commission agreement[2] and proceeded to deny Roth's motion insofar as it pertained to plaintiff's first and second causes of action, but did grant the motion with respect to the cause of action for punitive damages. All of plaintiff's claims against Karp were dismissed except the one predicated upon Judiciary Law § 487 (1). Roth and Karp appeal.

Roth takes exception to Supreme Court's *sua sponte* amendment of the complaint, contending that he was substantially prejudiced since the amendment changed the theory of liability after extensive discovery based upon plaintiff's claim of an express written commission agreement had been completed. An application to amend under CPLR 3025 (c) is addressed to the sound discretion of the trial court and should be determined in the same manner and by weighing the same considerations as upon a motion under CPLR 3025 (b) (*see, Murray v City of New York*, 43 NY2d 400, 405). Pursuant to that subdivision, leave to amend pleadings is freely given in the absence of operative prejudice (*see, Edenwald Contr. Co. v City of New York*, 60 NY2d 957, 959). Moreover, since a summary judgment motion is the procedural equivalent of a trial (*see, Jehle v Hertz Corp.*, 174 AD2d 812, 813), Supreme Court was free to invoke the provisions of CPLR 3025 (c) (*see, Thailer v LaRocca*, 174 AD2d 731, 732).

In our view Supreme Court did not abuse its discretion since Roth was not unduly prejudiced by the amendment. The record clearly establishes that he was aware of the oral commission agreement, having participated in its formation, and that he recognized its existence as exemplified by his attempt to induce plaintiff to reduce his commission, which would have been unnecessary had there not been an agreement between

---

2. The Statute of Frauds does not apply to a contract to pay compensation to a duly licensed real estate broker or salesperson (*see*, General Obligations Law § 5-701 [a] [10]).

him and plaintiff relative to the Bove transaction. Further, any prejudice can easily be alleviated by permitting Roth to conduct further discovery on this issue.

Applying the rule that unambiguous terms of a contract must be given their plain and ordinary meaning (*see, Fritzsch v County of Chenango*, 198 AD2d 650, 651), we reject Roth's argument that this dispute was included in the settlement of the Evergreen action because the open-court stipulation therein is plainly limited to that action.[3]

Substantively, Roth argues that plaintiff cannot recover a commission because he cannot prove that he was the procuring cause of the Pheasant Hollow transaction. While that is the general rule (*see, Hagedorn v Elwyn*, 229 AD2d 654, 655-656), there is an exception. Even though unable to satisfy the requirements of the general rule, a broker is entitled to recover a commission where the owner terminates his or her activities in bad faith and as a mere device to escape the payment of the commission (*see, Quantum Realty Servs. v ISE Am.*, 214 AD2d 420, 421; *Sholom & Zuckerbrot Realty Corp. v 101 Fleet Place Assocs.*, 206 AD2d 965, 966; *O'Connell v Rao*, 70 AD2d 982, 983, *lv denied* 48 NY2d 609). Given Roth's activities after plaintiff refused to reduce his commission, i.e., his direct negotiations with Bove, naming himself broker and the withdrawal of the July 1, 1987 proposed contract indicating that plaintiff was the broker, we agree with Supreme Court that there is a triable issue of fact as to whether Roth terminated his agreement with plaintiff in bad faith. Accordingly, Supreme Court properly sustained plaintiff's first cause of action.

Plaintiff's second cause of action should have been dismissed against Roth because one contracting party does not have a cause of action against the other for inducing the breach of a contract (*see, Tri-Delta Aggregates v Goodell*, 188 AD2d 1051, *lv denied* 82 NY2d 653; *Bradford v Weber*, 138 AD2d 860, 862).

We shall now turn to Karp's challenge to plaintiff's cause of action against him predicated upon Judiciary Law § 487 (1), which provides that an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party", is liable for treble damages. Plaintiff has enumerated a number of purported acts of deceit and collusion perpetrated by Karp; however, only those acts that occurred on or after the commencement of a judicial

---

**3.** The stipulation in pertinent part reads: "Roth, has offered and the Plaintiffs agree to accept the sum of $330,000 in full satisfaction of the claim which is pending before the Court". It is undisputed that only the Evergreen action was pending before Supreme Court at that time.

proceeding are encompassed within Judiciary Law § 487 (1) (*see, Gelmin v Quicke,* 224 AD2d 481, 483; *Beshara v Little,* 215 AD2d 823; *Bankers Trust Co. v Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 AD2d 384, 386). Here, the only relevant acts are Karp's alleged withholding of a document from discovery and testifying falsely at a pretrial deposition. While we agree with plaintiff that such acts could provide the foundation for an action under Judiciary Law § 487 (1), Karp's deceit must have caused plaintiff damage. We are constrained to conclude that Supreme Court should have dismissed this cause of action due to plaintiff's failure to establish a nexus between Karp's acts and [plaintiff's] damages[4] (*see, Cresswell v Sullivan & Cromwell,* 771 F Supp 580, 588, *affd* 962 F2d 2, *cert denied* 505 US 1222; *Mills v Pappas,* 174 AD2d 780, 783, *lv dismissed, lv denied* 78 NY2d 1121, *cert denied* 504 US 971).

Cardona, P. J., Peters and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied (1) the motion of defendants Paul J. Roth and Katal Country Club seeking dismissal of plaintiff's second cause of action, and (2) the motion of defendant Bernhardt Karp seeking dismissal of plaintiff's fourth cause of action; said motions granted to that extent and said causes of action dismissed; and, as so modified, affirmed.

---

4. Plaintiff alleges that Karp's conduct contributed to an unwarranted trial in the Evergreen action, causing plaintiff to incur unnecessary legal fees and lose five years of accumulated interest. These damages are wholly speculative as there is nothing in the record to indicate that, had Karp not acted as he allegedly did, a trial in the Evergreen matter would not have ensued.